Good afternoon, your honors, and may it please the court, my name is Lakshmi Reddy, certified law student, and along with my colleague Andrea Reyes and supervising attorney Professor Holly Cooper, we represent the petitioner appellate Mr. Lam V. Quan. I will limit my discussion to the standard of review and Refab Act claims to four minutes, and Ms. Reyes will address the due process claims for the remaining four minutes, and we would like to reserve two minutes for rebuttal. As of today, Mr. Quan, a Vietnamese refugee, has been in immigration detention for four years. He suffers with permanent cognitive disabilities due to a traumatic brain injury. He cannot read, write, or engage in complex thinking. His disability prevents accurate testimony and is so severe that he could not tell an interviewer the location of his detention center. The district court's denial of Mr. Quan's petition for a writ of habeas corpus should be reversed because the district court erred when it applied the incorrect standard of review and dismissed Mr. Quan's Section 504 claim. To my first point, the district court did not apply the requisite de novo review of Mr. Quan's habeas petition. Mr. Quan put forth constitutional and legal issues as to whether the quantum of evidence presented amounted to clear and convincing evidence of present danger, and instead the district court announced a clear error standard in the opinion at 1 ER 9, and during the hearing concluded a de novo review could not be applied at 2 ER 14. The clearly erroneous standard affords significant deference to the fact finder, while de novo allows the reviewing court to evaluate the matter anew. Can I ask a question then? So say we agree with you that the district court should have applied a de novo standard. We would also be applying a de novo standard, is that right? Correct. And at that point, once we have the case, are we looking at what the district court did or are we looking at what the IJ did? Because your brief talked a lot about district court errors, but usually when we have two layers of review of an administrative agency, our review goes all the way back to the administrative agency, it kind of skips the district court. So I was interested in why your brief doesn't talk about what the IJ did wrong. Yes, Your Honor. What we're bringing forth, it would be reviewing both because the district court itself had procedural errors in reviewing the immigration judge's opinion, and also the immigration judge had errors as well that the district court was reviewing. So it would be looking at both what was done at the district court level and what was done at the IJ. Do we need to worry about what the district court did if we can just apply de novo review to what the IJ did? I think the district court errors are distinct in this case. They're separate from what the errors that the IJ had, and so I would say that there should be a de novo review of the district court errors as well. Let me jump in then because Judge Friedland raises a good question. Did the district court actually elicit any new evidence or testimony or was it simply reviewing what the IJ did? The district court was reviewing what the IJ did. There was a new piece of evidence that was presented that was not in front of the IJ, which was the medical declaration by Dr. Ariel Shieblo. So there was additional information then? Correct. But that information is in our record too, so I mean is there any reason if we agree with you that there's a problem, is there any reason for us to send it back to the district court rather than just figuring out whether what the IJ did is okay or not? We would like the district court to review again with the proper procedure, Your Honor, and we would like the procedures in place at this time. But why? I mean, why wouldn't we just do it? Your Honor, you could also take the issue up as well, but we do feel that Mr. Kwan should be back at the district court with the proper procedures. Why is that? If you want him to be released and if you're on a roll with us, aren't you better off if we decide it in your favor than if the district court decides it in your favor? Your Honor, if the panel would like to affirm and release based on their decision reviewing the IJ determination, then we're okay with that as well. So you could look to what the IJ did as well. Is there anything further that you would like to submit to the district court that we don't have now ourselves? No, Your Honor, not at this time. So you don't, you would, I know we're eating your time, don't worry so much for the clock right now, it's okay. I imagine that, I think we're asking these questions, was there anything more, like for example, is there another expert out there that could help your client before the district court, or is the record as far as you're concerned, is the record as good as it's gonna get for Mr. Kwan now? Your Honor, we could bring another expert to speak more to his cognitive disabilities and how that affects, in particular, specifically rehabilitation, and I think the experts do expound on that a lot in the current decks, but we could bring a more recent evaluation in front of the district court. So how is that though? I mean the district court is reviewing the IJ for it to be new evidence that could be considered? Yes, Your Honor, but in this case what we have in, if we look to Boumediene, I mean there's an expansive view of what the evidence that can be provided in a habeas petition, and in this case the declaration by Dr. Shiloh that was provided, and maybe a potential new declaration, would better, maybe better help the district court understand the extent of Mr. Kwan's disability and how it affects his day-to-day actions and how he can show rehabilitation. I do see that my time is up, but I would like to reserve time for rebuttal too. All right, so what we'll do, we'll go ahead and do is, we'll give her two minutes. Okay, thank you. All right, Reyes. Good afternoon, Your Honors. May it please the court, my name is Andrea Reyes, certified law student on behalf of the appellant petitioner, Mr. Lambie Kwan. The district court violated Mr. Kwan's due process rights in three ways. First, by shifting the burden of proof onto Mr. Kwan to prove he is not dangerous. Second, by failing to apply the correct standard of press and dangerousness by clear and convincing evidence. And third, by denying Mr. Kwan an individualized review of his claims. To my first point, it is undisputed that at Mr. Kwan's Franco Gonzalez bond hearing, the government had the burden to justify the tension by proving press and dangerousness by clear and convincing evidence. The district court did not place that burden on the government, but instead on Mr. Kwan. Okay, could I ask you to tell us why the government failed instead of what the district court did wrong? Because I'm not persuaded that we really need to worry about what the district court did. I think we need to Sure, your honor. And that speaks both to the shifting of the burden as well as a failure to apply the press and dangerousness standard. And that is, the government here is relying on two pieces of evidence to continue to confine Mr. Kwan in civil detention. First, it's his remote and criminal history, and second is evidence of inconsistent testimony he gave during the bond hearing regarding the 2011 conviction. As to the testimony, this evidence cannot be clear and convincing evidence of present danger because the testimony itself is a result or an expression of Mr. Kwan's cognitive disability, and not evidence of a lack of remorse, as the government argues. And furthermore, it's undisputed that Mr. Kwan has severe cognitive and language deficiencies, which make the testimony itself not be evidence that could prove that press and dangerousness. Furthermore, the only IJ that took testimony from Mr. Kwan attributed the inconsistency of the testimony to his childlike behavior, and that's at ER 124. Furthermore, as to the criminal history, criminal history alone will not always be sufficient to deny someone a bond based on danger. Here, 11 years have passed since Mr. Kwan's last conviction, and the government has failed to present any evidence beyond the criminal conviction, which is the same evidence that the government used in 2018 to justify Mr. Kwan's detention today in 2022. And again, Your Honor, the government has, the interest of the government has to fulfill here points to the press and dangerousness standard. So in order for them to, for the government to justify Mr. Kwan's ongoing detention, they have to prove press and dangerousness by clearing convincing evidence, and the record is simply devoid of any evidence that Mr. Kwan is presently offending, engaging in any violent activities. The government did not present, for example, a forensic evaluation that shows that Mr. Kwan is likely to reoffend, and neither evidence that Mr. Kwan was offered classes that he rejected. I mean, that's even assuming that such classes exist for him and that he would have the capacity to engage with them. In short, Your Honors, to allow the government to continue to detain Mr. Kwan on the same evidence that it presented in 2018 and 2020, and now here we are in 2022, is essentially to put the burden on Mr. Kwan on the onset and to justify detention by mere silence. And that would really render the access to bond hearings and the allocation of the burden to the government meaningless. And lastly, Your Honor, to my last point, regarding the due process claim as well, which, to Your Honor's point, we would address how the IJ as well did not do an individualized review. Due process requires an individualized review of the claims. And here, the particular situation demands a review of Mr. Kwan's cognitive disability, his inability to present rehabilitative metrics the way that the district court seemed to expect from him, the fact that he cannot read, he cannot write, he cannot have very serious issues with memory. It's just simply the IJ and by faulting him for his inconsistent testimony, for his lack of rehabilitative efforts, is holding Mr. Kwan to a standard he cannot possibly meet. And that is not due process, Your Honor. And I see that I'm out of time here, but if the panel has any questions. Oh, you're muted actually, Judge Owens. I am. My office, Chambers of the Fire Department. Thank you very much, Ms. Reyes, for your argument. And now we'll hear from Ms. Ramos. Good afternoon, Your Honors. I may have missed the court. Michelle Ramos on behalf of the government. This appeal stems from the district court denial of Mr. Kwan's habeas petition challenging an immigration judge's denial of his request for bond. In particular, the IJ found that Mr. Kwan poses a danger to the community if released based on his 13-year criminal history, lack of rehabilitation, and lack of an adequate release plan. Mr. Kwan's contentions on appeal boil down to two arguments. First, he disagrees with the IJ's weighing of the evidence in the bond record, and he desired for the district court to impermissibly re-weigh the evidence anew. And second, he believes that the district court erred in dismissing his district court's decision because it found that the IJ did not violate the Constitution and did not commit any clear legal error. This court should also affirm the district court's proper dismissal of Mr. Kwan's Rehabilitation Act claim. The district court had habeas jurisdiction to review Mr. Kwan's bond denial for constitutional claims and legal error. However, the district court may not second-guess the IJ's weighing of the evidence. Its review is instead limited to whether the discretionary bond process itself was constitutionally flawed, or whether the IJ's decision reflects clear error or is unsupported by sufficient evidence. Examples of constitutional claims that might be brought in a habeas petition include claims that an IJ failed to consider constitutionally required factors when setting a bond amount, or claims that the government failed to provide an audio recording or transcripts of due process of certain bond hearings, or claims that detention without a bond hearing is unconstitutional in itself. Here, Mr. Kwan makes no such constitutional claims. He simply believes that the IJ should have accorded more or less weight to certain factors in the bond record. In particular, he believes the IJ accorded too much weight to three factors in the evidence. One, the age of his 2011 conviction for assaulting a police officer. Two, his denial of the actions that led to that conviction. And three, his lack of rehabilitation. So, say we just forget about the district court for a minute and talk about what our review should be. If we're looking at what the IJ did, why shouldn't we use the approach that Modamedy talks about? I understand that that's in a question about whether someone needs to be detained, and there it's a de novo standard of review. Because Mr. Kwan has not presented any constitutional claims. If Mr. Kwan had presented constitutional claims, the government concedes de novo review exists for the district court as well. These are not constitutional claims. Is Modamedy a constitutional claim? I think it's just, is the person dangerous? Do they need to be detained? I don't recall off the top of my head. I know that Mr. Kwan relied heavily on the Ramos decision out in Northern District of California for the proposition for a de novo review. And in that case, it stemmed from the Ninth Circuit's decision in Singh v. Holder, which was 638 F.3d 1196, to hold that there was no guidance in Singh in terms of the reviewing the application of a clear and convincing evidence standard. And thus, Ramos held that review of that should be de novo. And I believe that is what Mr. Kwan's primary contention on the de novo standard rested on. Here, we don't have constitutional claims. I'm sorry to jump in counsel, but I mean, it's a little troubling that, as I understand your view, your view is that as long as the IJ points to something, someone could be detained for years and years and years and years as long as they point to something. That's not the government's position, your honor. IJs have broad discretion under a matter of Guerra, a BIA decision laying out a number of permissible but not exhaustive list of factors that an IJ may consider in determining whether an individual poses a dangerous to the community. The IJ has that broad discretion. It's not just anything, though. Okay, but so let's say they point to, let's say they point to one of the Guerra factors, just one, and say because of this, you know, this guy, when he was 17 years old, got into a fight at school. And so therefore, I don't trust this guy. And that's one of the Guerra factors, you know, a history of and therefore, he can be detained. Sometimes immigration needs to go on for years and years and years and years and years. And we have no way to review that. Well, your honor, immigration bond decisions are extremely fact dependent. Just one thing could be enough if an individual... Right. So I guess what I'm trying to get at here is that let's assume that's what it is. An IJ says this, this young man was accused of getting into a fight during a football game when he was 17 years old. And because of that, he needs to be, he's now 25, eight years later, like this case, and he needs to be detained for all of the immigration proceedings of this fight he had when he was 17 years old at a football game. Because they point to it, is that basically unreviewable because they pointed to something? It is not unreviewable. It is reviewable for clear error. So what would be the error? The guy admits he got into a fight at the football game. So what's the clear error? The error may be in that case that it is not enough or it's unreasonable that that single thing was enough to demonstrate by clear and convincing evidence that he presents present dangerousness. That is not Mr. Kwan's situation here. Hold on, but just stop for a second. So we can review that, whether there's not, whether that's clear and convincing evidence or not. You may review it for clear error. Well, the district court may review it for clear error. The district court may not reweigh all of the evidence as presented. For instance, it is often looked at as reasonableness. Is it reasonable for the IJ to have come to that conclusion? Or was it error? To put it more simply, it is a very fact dependent situation. We have nothing like that in Mr. Kwan's case. Mr. Kwan has a 2011 conviction for assaulting a police officer. He threw six beer bottles at the police officer's head and seriously injured the police officer. He received the maximum sentence by jury trial for that conviction, as well as a three year enhancement for personally inflicting great bodily injury on that police officer. He was then... Counsel, if I can interrupt you here, because I wanted to get to the question of there's this underlying issue, which is, as I understand it, on the merits of his adjustment of status and so on. He's been winning so far. The government is appealing that. But I read from... Sorry. It's actually an update to that, Your Honor. OK, that was what I was going to ask, because the magistrate judge said the government said a year ago that it would be decided soon. So has it been decided? I'd be very happy to hear that. It has been decided. The government won the appeal and the BIA remanded it to the IJ, remanded it to the IJ on June 7th, 2021, in order for the IJ to consider whether Mr. Kwan was eligible for any other relief. On remand, Mr. Kwan renewed his adjustment application. The IJ denied that application and ordered him removed on September 13th, 2021. Mr. Kwan has appealed that order of removal and it remains pending at the board. So if that is upheld, then the basis for detaining him will change. Is that right? If it's upheld, detention, he may not be detained after that. It depends. The 1226C detention or here, the denial of his Franco bond that he was afforded as a subclass two member, that extends while his appeal is pending. If the IJ affirms it and then no further action is taken in terms of a petition for a remand, then that would be between the government and Mr. Kwan's removal. But are we racing against mootness here? I mean, when will it be the case that that appeal will be over? And so he won't be in this posture that has us under this form of detention? Unfortunately, I'm unable to estimate how long the BIA might take to decide Mr. Kwan's appeal. But it is until Mr. Kwan's appeal is done pending at the board. Once the board affirms the removal order, his mandatory detention would end. His removal proceedings conclude the government could at that point remove him absent any further action, such as a petition for review or a state. What was the reason for appealing? What was the government's argument on appeal about his adjustment of status? The government, I believe the argument went down to the the factors, the factors that went into his eligibility and the discretionary. I don't have it right in front of me, but I'd have to go back to it. But the DHS did raise that appeal and the board affirmed DHS's arguments. And that's the extraordinary and unusual circumstances part of it, or you don't know? I guess it would be nice to have told us this at some point. I believe it went to the to the hardship and the factors that your honor has I think there was a footnote maybe about this in one of the briefs, but I don't think we have the papers in our record, do we? It does. Has anyone submitted the record of this? I don't believe it's been submitted because it all well, the briefing was done while he was back pending before the immigration judge. So all of the briefing at that point does include that he his proceedings had been remanded and he was before the immigration judge. And so his removal proceeding, the immigration judge was reviewing whether he was eligible for any other relief. However, September 13th is when it was denied and he did not appeal until November 21st after a briefing had been submitted to the court. So I don't believe the status of his appeal of that denial would be anywhere in the briefing. So can I just try one more time on this Modamedy question? It seemed like you weren't familiar with the case I was talking about, but it is part of the Ramos discussion about the analogy to in the criminal context, whether someone is detained. And so I'm wondering if you have a response to Ramos's analogy to the clear and convincing evidence standard in criminal bail cases and our review of it. Do you have a reason for why we shouldn't use that analogy? This isn't a criminal bail determination. This is a review of an IJS bond decision, which is typically barred by 826, 8 U.S.C. section 1226 E through habeas jurisdiction. The only way to review that bond decision is through constitutional claims or for legal error. Here, the government's position is that there was no constitutional violation, as the district court found. Therefore, the district court reviewed for the remaining jurisdiction that it had legal error and found that the IJ committed no legal error. Counsel, this case were back before the district court. What's your position on whether Mr. this new declaration that counsel mentioned? Can he do that in the district court? The government's position would be that he could not submit that Mr. Kwan has cited no authority that would allow him to supplement a bond record that is being reviewed by the district court. And the government is not aware of any of that would deem that that route forward appropriate. The district court's review is limited to the bond decision and the bond record as it stands. I see my time is expired if there's no further questions. OK, well, no. Thank you very much, Ms. Ramis, for your argument. Ms. Reddy. Two minutes, you may proceed. Thank you, your honors. As to the government's position that we did not bring forth constitutional and legal claims, that is incorrect. Mr. Kwan did bring forth constitutional and legal claims, which was whether the quantum of evidence amounted to clear and convincing evidence of present danger. That is a constitutional question. This court in saying did do a similar analysis where it apply announced the clear and convincing evidence standard and then applied it to the facts of Mr. Singh's case. And then second, your honors, in regards to the merits, an important point is that Mr. Kwan's case was reviewed for Convention Against Torture. And while it was denied at the IJ level, it is on appeal at the BIA level. And if the 212H adjudication is any indication of time, we're looking at another 12 to 13 months of adjudication where Mr. Kwan would be detained. And so we want to bring that to the court's attention. And then in regards specifically to the errors that the IJ made, specifically, the IJ did not give Mr. Kwan an individualized review because the IJ did not take into account his disability, especially when it deemed that the testimony was evidence of lack of remorse to keep him continually detained. And second, that testimony was found to be not credible by the IJ that actually took the testimony from him, IJ Birch. And this is not a discretionary reweighing of the evidence that we're asking the district court to do. Instead, we're asking the district court to look at the totality of the evidence that was presented by the government and whether that evidence would be clear and convincing evidence of present danger of what Mr. Kwan today. And so at this time, we ask this court to reverse the denial of the writ of habeas corpus at the district court level. Thank you. Any questions for my colleagues? All right, seeing none, I want to thank everyone in this case, Ms. Reddy, Ms. Reyes, Ms. Kase, and you all comport yourselves very, very well. I expect that from the Department of Justice. Law students, you never know, but I think you both did a very good job today. So you should all everyone should be should be proud of themselves in this case. So thank you. This matter has been submitted. Thank you, Your Honor.
judges: Boggs, OWENS, FRIEDLAND